BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
PATRICK D. KIBBE (Cal. Bar No. Pending)
Assistant United States Attorney
General Crimes Section
       1200 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone: (213) 894-6482
       E-mail:   patrick.kibbe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-mj-6733 |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN SUPPORT OF APPLICATION FOR REVIEW OF RELEASE ORDER |
| v. | |
| VIRGINIA REYES, | |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Patrick D. Kibbe, hereby files its Motion in Support of Application for Review of Release Order to the duty District Court Judge under 18 U.S.C. § 3145.

        This motion is based upon the attached memorandum of points and authorities, the Application for Review of Order Setting Conditions of Release filed November 6, 2025, the files and records in this case, and such further evidence and argument as the Court may permit.

1    On October 31, 2025, government counsel contacted defense

2 counsel, Gregory Nicolysen, about this Application.  Defense counsel

3 will not stipulate to defendant's detention.

4  Dated: November 6, 2025          Respectfully submitted,

5                                   BILAL A. ESSAYLI
                                    First Assistant United States
6                                   Attorney

7                                   ALEXANDER B. SCHWAB
                                    Assistant United States Attorney
8                                   Acting Chief, Criminal Division

9
                                         /s/
10                                  _____
                                    PATRICK D. KIBBE
11                                  Assistant United States Attorney

12                                  Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Virginia Reyes is charged by complaint with conspiracy to impede and injure federal officers, in violation of 18 U.S.C. § 372.  As detailed in the complaint, Defendant and her brother, co-defendant Isai Carrillo ("Carrillo"), were members of an organization called "VC Defensa."  Part of the mission of VC Defensa was to disrupt and impede federal officers from enforcing immigration laws. That is exactly what Defendant did, including by participating in a violent ambush of government vehicles on July 10, 2025 in which Defendant blocked government vehicles with her own while her brother and others hurled large rocks at them.



Complaint at 20.  Defendant is identified in the Complaint as Subject 1, and Defendant's vehicle is identified as Subject Vehicle 1. Carrillo is identified in the Complaint as Subject 4.

As a result of the ambush, at least four government vehicles were damaged and a federal contract employee was injured when a rock smashed through her window, shattering the glass and striking her.

This ambush was just one incident in an ongoing conspiracy in which Defendant has and will continue to put law enforcement in danger.  As Defendant herself stated, "I stopped giving a fuck I do what they do.  I'm surprised they haven't arrested me.  But I know it's just a matter of time before the feds comes knocking on my door . . . In the meantime imma keep doing what I do".  Complaint at 31–32.

Defendant has a history of violent conduct.  Defendant has previous convictions for (1) fight/noise/offensive words in 2012; (2) battery in 2017; and (3) battery in 2018.  Defendant has a pending CVB violation in this Court for (1) outside radio amplification; (2) disturbing the peace by fighting, loud noise, or offensive words; and (3) illegal installment of a siren.  See United States v. Virginia Reyes, 2:25-po-01287-MAR.  Defendant also has previous arrests for (1) battery in 2008; (2) force/assault with dangerous weapon not firearm in 2016; and (3) inflicting corporal injury on a spouse/cohabitant/date in 2023.  As the charges in this case demonstrate, Defendant has not been deterred from continuing this type of conduct.

On October 29, 2025, law enforcement attempted to execute arrest warrants for Defendant and Carrillo, and a search warrant at their shared residence.  At approximately 5:15 am, Defendant posted on social media that the "Feds" had their house surrounded and to come support.  Both Defendant and Carrillo went out to the back alleyway. Carrillo was arrested, while Defendant made good on her escape by

2

fleeing to a car that pulled up and drove away.  Defendant self-surrendered approximately 12 hours later, after Government counsel spoke with counsel for Defendant.

Now, both Defendant and Carrillo have been released to resume living together.  Here, the Magistrate Judge ordered Defendant released on a $75,000 bond with surety, location monitoring, computer monitoring, home detention, and other conditions.  The government appeals Defendant's release to the duty District Court judge under 18 U.S.C. § 3145.[1]

Defendant should be detained.  The conditions of release imposed by the Magistrate Judge will not reasonably assure Defendant's appearance and the safety of the community, nor will any additional conditions of release.  The very purpose of Defendant's conduct is to flout the lawful operation of federal law.  To further her conspiracy, Defendant has shown her willingness to participate in violent acts against law enforcement and government property.  While Defendant has community ties, it is those same community ties that helped effectuate the conspiracy in this case and Defendant's flight as federal agents attempted to arrest her.  The release conditions imposed by the Magistrate Judge do not mitigate these risks.  Accordingly, this Court should detain Defendant.

**II.  STATEMENT OF FACTS**

**A.  Defendant Charged by Criminal Complaint with Conspiracy to Impede and Injure Federal Officers**

On October 28, 2025, Defendant was charged by complaint with conspiracy to impede and injure federal officers, in violation of 18

---

[1] The Government is separately appealing the pretrial release of Carrillo.

3

U.S.C. § 372.   The Complaint details the ongoing nature of the
conspiracy, including Defendant communicating with others on how to
effectively impede law enforcement, and participating in a violent
assault on July 10, 2025.   Details of Defendant's conduct from the
Complaint include the following.

Defendant is a member of an organization called "VC Defensa."
VC Defensa operates and manages a "Rapid Response Network" ("RRN").
An RRN is comprised of several volunteer members who mobilize in
vehicles to follow, chase, agitate and impede federal agents and
their operations so that immigration arrests are unsuccessful.   The
VC Defensa RRN members also conduct surveillance of DHS office
buildings and alert the community to the presence of federal agents
within their neighborhoods.   Complaint at 3.

VC Defensa coordinates their anti-ICE patrols with at least one
other RRN organization.   Id. at 6.   As Defendant explained in a
Facebook message to another individual who asked if Defendant was a
member of the group 805 immigration, "Nah. I'm with VC defensa. We
are a little more aggressive. But we work with 805immigration. They
help us keep look out at the ice headquarters . . . They tell us who
comes in and out. And we park at a distance to follow the cars".   Id.
at 29.

On June 10, 2025, Defendant texted Carrillo a picture of a
plastic shield with the words "ICE OUT!!" and stated, "Made em
myself".   Id. at 28.   Carrillo responded, "Dope Buy some laser
pointers green ones".   Id.   As the Complaint affiant explained, green
laser pointers have been used to shine in the eyes of federal
officers during recent civil disturbance events related to
immigration protests.   Id.

On June 21, 2025, Carrillo messaged Defendant, "Pick me up tomorrow". Defendant stated, "Pick you up for?". Carrillo replied, "To bug the ice agents!!!". Defendant stated, "With your record we'll both get arrested". Id. at 30.

On July 3, 2025, Carrillo advised Defendant, "Be more careful you idiot". Defendant stated, "I am careful. The racist fucken CHP boot licker is a bitch". Carrillo stated, "Just listen for once Be extra careful. Your in they're radar now". Defendant stated, "I've been on their radar lol [emoji with tears] they know my name they drive by my house . . . One of the ICE agents told me I'm famous lol [emoji with tears] . . . ". Id. at 28.

Later on July 3, 2025, Defendant had a text chat on Facebook messenger with an individual named "MC." MC stated, "Ur a real one for following them!!! [referencing US Government law enforcement vehicles]". Defendant stated, "Imma get arrested soon but fuck it. They hate me. They have the FBI building a case on me. But they don't have anything on me other than traffic violations". Later in the conversation, Defendant stated, "They tried getting me arrested soon many times lol [laughing with tears emoji] . . . But right now they are just building up evidence towards me. Because I be driving like a savage to keep up with them . . . I got some crazy videos but I can't post because it will incriminate me. Lol [laughing with tears emoji] . . . The community donated a dashcam because they try to hit me with their cars all the time . . . But I'm too quick they hate me [laughing emoji with tears]". Id. at 29.

On July 5, 2025, Defendant participated in a group text message with other individuals. During the conversation Defendant stated,

1    "I'll see you then if I haven't already been arrested by the FBI lol

2    [laughing emoji with tears]". Id.

3        On July 10, 2025, Defendant worked in concert with others to

4    assault federal vehicles and officers.  On that day, agents were

5    executing federal search warrants on locations including a business

6    known as the Glass House Farms in Ventura County, California.  Id. at

7    3.  Before the enforcement operations commenced, agents determined

8    that the operation was compromised earlier than expected due to

9    social media posts.  During the search warrant enforcement operation,

10   numerous protestors arrived in and around the area of the Glass House

11   Farms.  Some of the protestors were members of or associated with VC

12   Defensa, which posted on social media to its members to go to the

13   Glass House Farms.  Id.

14       During the Glass House Farms enforcement operation, protestors,

15   including Defendant, built a roadblock using farm equipment at the

16   primary entrance/exit to the Glass House Farms.  Id. at 8.  Due to

17   the roadblock, federal law enforcement vehicles used an alternate

18   exit via a dirt service road onto Wood Road to leave the location.

19   Id. at 4.

 

**Left:  Roadblock of main exit to the Glass House Farms.  Id. at 8.
Right: Photo of Defendant at the Glass House Farms.  Id. at 11.**

1    When Government vehicles attempted to exit onto Wood Road and

2  travel north, protestors, including VC Defensa members, created a

3  chokepoint and ambush of the vehicles.  Specifically, at least two

4  vehicles and several individuals, including one with a bicycle,

5  attempted to block the Government vehicles from exiting.  Meanwhile,

6  other individuals threw large rocks at the vehicles.  <u>Id.</u>

7    Defendant (Subject 1) played a main role in that assault by

8  blocking the Government vehicles from exiting with her vehicle

9  (Subject Vehicle 1), while others including Carrillo (Subject 4)

10  threw rocks at the vehicles.  Following the assault, Carrillo got

11  into Defendant's vehicle.  <u>See</u> <u>Id.</u> at 6-22.



**Defendant using her vehicle (SUBJECT VEHICLE 1) to block
Government vehicles while Carrillo (SUBJECT 4) throws rocks at them.
<u>Id.</u> at 17.**

7



**Defendant using her vehicle to block Government vehicle while Carrillo throws rocks at it.** <u>Id.</u> at 20.



**Defendant using her vehicle to block Government vehicle while Carrillo throws rocks at it.** <u>Id.</u>



**Carrillo getting into Defendant's vehicle following assault.** <u>Id.</u> at 22.

In total, at least four Government vehicles suffered damage due to being struck by rocks, and a federal contract employee was injured as she was struck by a rock that smashed through her window.   Id.

Defendant did not stop there.  On July 30, 2025, Defendant and Carrillo discussed how to more effectively impede law enforcement vehicles, including by putting a person in risk of being hit by a vehicle.

Carrillo:  Tail gate closer so they won't get between you any the other vehicles

Defendant: They tend to reverse and break check

Carrillo:  Nah don't let them get the chance ... What you need is someone with a bike ... Don't give them the opportunity to get between you them...

Defendant: So they can get hit and go flying

Carrillo: It's a strategic counter defense

Id. at 29-30.  As described above and in the Complaint, during the July 10, 2025 incident, Defendant used her vehicle to impede law enforcement and another subject did the same with his bicycle, while Carrillo threw rocks at the Government vehicles.

On August 13, 2025, Defendant impeded federal agents with her vehicle, in coordination with at least one other person, when she pursued a US Government law enforcement vehicle onto a military base in Port Hueneme, California.  As a result, Naval Police Officers detained Defendant.  Defendant received citations for (1) outside radio amplification; (2) disturbing the peace by fighting, loud noise, or offensive words; and (3) illegal installment of a siren. See United States v. Virginia Reyes, 2:25-po-01287-MAR.

9

For her conduct, Defendant was charged by criminal complaint in this case on October 28, 2025 for conspiracy to impede and injure federal officers, in violation of 18 U.S.C. § 372.

**B.    Arrest and Search Warrant Execution on October 29, 2025**

On October 29, 2025, law enforcement attempted to execute arrest warrants for Defendant and Carrillo, and a search warrant at their residence.  At approximately 5:15 am Reyes posted on social media that the "Feds" had their house surrounded and to come support.



**TikTok Live Social Media Post by Defendant October 29, 2025**

Defendant and Carrillo then went out to the back alleyway. Defendant made good on her escape by fleeing to a car that pulled up and drove away.  Carrillo was arrested on scene.  Defendant self-surrendered approximately 12 hours later after Government counsel spoke with counsel for Defendant.

On October 30, 2025, while Defendant was being transported by an agent to the United States Marshals Service for her initial appearance, Defendant made the following statements that were captured on audio recording.

Defendant: Were you on my Tik – were you on my Live when I realized you guys were outside? [laughing]

Agent:      What was that?

Defendant: I said were you on my Live when I realized you were outside?

Agent:      [Inaudible noise]

Defendant: It was a, it was a, good morning guys, get ready with me to outsmart federal agents [laughing]

Agent:      We're almost there

Thus, Defendant admitted that she was attempting to "outsmart federal agents" the day before when she fled, and laughed about it on her way to Court.

### C.    Detention Hearing on October 29, 2025

Defendant made her initial appearance later that day on October 29, 2025 before the Honorable Patricia Donahue and a detention hearing was held.  The government moved for detention based on the risk of flight and danger to the community.  Judge Donahue rejected the government's request for detention and ordered that Defendant be released on a $75,000 bond with surety, a third party custodian, location monitoring, computer monitoring, home detention, and other bail conditions, including not to participate in immigration protest activities or organizations.

## III. ARGUMENT

### A.    Standard of Review

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., the Court reviews a magistrate judge's detention order de novo.  United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990); 18 U.S.C. § 3145(b).  The Court must therefore determine "whether any condition or combination of conditions . . . will reasonably assure the

11

appearance of [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  See 18 U.S.C. § 3142; United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).  "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community."  United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).  Moreover, "[t]here are no formal evidentiary rules; the rules concerning admissibility of evidence in criminal trials are inapplicable. . . . [and] [t]he Court may proceed based on proffer and hearsay."  United States v. Possino, No. CR 13-00048-SVW, 2013 WL 1415108, at *2 (C.D. Cal. Apr. 8, 2013) (citing Winsor, 785 F.2d at 756).

    The Court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including family and community ties and past criminal conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); Winsor, 785 F.2d at 757.

    **B.    The Nature and Circumstances of the Offense are Serious**

    Defendant's conduct is brazen.  Defendant has conspired with others and acted to mount a full-on assault of law enforcement. While any assault is serious, Defendant's conduct is of particular concern because its very purpose is to undermine the rule of law.

12

Because Defendant disagrees with the enforcement of laws passed by Congress, including the execution of court-ordered search warrants, Defendant acted with others to ambush and assault Government vehicles and federal officers on July 10, 2025, and impeded and conspired with others to impede officers on other occasions.  The threat of Defendant's vigilantism should not be overlooked by the Court, and the nature and circumstances of this offense weigh in favor of detention.

### C.    Defendant's History and Characteristics Weigh in Favor of Detention

Defendant has previous convictions and arrests for relevant and concerning conduct.  In 2012, Defendant was convicted of fight/noise/offensive words, for which she received one day of confinement and one year of probation.  In the same case, Defendant had been charged with obstructing a public officer.  Pretrial Services Report (PSR) at 3-4.  In 2017, Defendant was convicted of battery, for which she received 10 days of confinement and 3 years of probation.  Id. at 4.  In 2018, Defendant was charged with one count of battery to a spouse/ex spouse/date and one count of battery.  The PSR does not have specific disposition information, but lists this offense as a conviction and the result as a custody entry.  Id. While these convictions were classified as misdemeanors, the fact that they are similar to the offense in this case demonstrates that Defendant has not been deterred from violent conduct.

Defendant also has previous arrests for similar conduct, including for (1) battery in 2008; (2) force/assault with dangerous weapon not firearm in 2016; and (3) inflicting corporal injury on a spouse/cohabitant/date in 2023.  While these arrests carry less

13

weight than Defendant's convictions, they nonetheless evidence an ongoing pattern and concern that Defendant has and will continue to engage in the same type of conduct that will put the community at risk if she is released.

Thus, Defendant's history and characteristics demonstrate that she cannot be trusted to abide by the conditions of release. "As the Ninth Circuit specifically recognizes, conditions of release depend largely on the Defendant's good faith—or lack of it. If conditions can too easily be circumvented or manipulated, they are not effective." United States v. Petersen, 557 F. Supp. 2d 1124, 1131 (E.D. Cal. 2008) (citing United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008)). Here, the conditions of release do not reasonably assure that Defendant will not continue her conspiracy to impede and injure federal officers by communicating and coordinating with other VC Defensa members or engaging with officers herself. Defendant's record of violent conduct, coupled with her ongoing efforts to impede and injure law enforcement, demonstrate that Defendant should be detained pending trial.

**D.    The Weight of the Evidence is Strong**

The weight of the government's evidence against an individual is also a consideration, albeit one of lesser importance. Motamedi, 767 F.2d 1403, 1408. The Court may consider whether the weight of the government's evidence increases the risk of non-appearance and/or the danger that defendant poses to the community. Id.

Here, the weight of the evidence is strong. Defendant is charged with conspiracy to impede and injure federal officers. As described above and in the Complaint, there are numerous messages between Defendant and others regarding their efforts to impede and

injure law enforcement officers as members of VC Defensa.  These messages firmly establish both the purpose of the conspiracy to impede and injure law enforcement officers and Defendant's membership in that conspiracy.

Moreover, the evidence is strong of Defendant's violent participation in that conspiracy on July 10, 2025 at the Glass House Farms.  Defendant is seen at the site of the protest driving her vehicle, which is registered to her, that was used to block the Government vehicles during the assault.  During the minutes leading up to the assault, Defendant was in contact with the VC Defensa hotline number a total of 10 times.  Id. at 30

In addition, Defendant and Carrillo exchanged texts about the incident.  On July 11, 2025, the day after the assault, Carrillo sent Defendant a video text message from an Instagram account that showed them assaulting agents at the Glass House Farms.  Id. at 31.  The next day, on July 12, 2025, Defendant messaged another person, "I stopped giving a fuck I do what they do.  I'm surprised they haven't arrested me.  But I know it's just a matter of time before the feds comes knocking on my door . . . In the meantime imma keep doing what I do".  Id. at 31-32.  Later that evening, Carrillo texted Defendant, "Manuel is in Oxnard I told him if anything happens to call you or me it I have the kids".  Id. at 31.

There was also a photo on one of Defendant's phones from a restricted fenced parking lot area at a DHS office located in Camarillo, California that showed the blue Ford Expedition that Carrillo damaged while Defendant was blocking the exit onto Wood Road with her vehicle.  The photograph stated in white lettering on top,

15

1  "7/17/2025 The broken windshield and mirror still not fixed [emoji
2  with smiling face and tears]".  <u>Id.</u> at 34.

 

12  **Left:  Photo of damaged blue Ford Expedition on Defendant's phone.**
13  **Right:  Photo of Carrillo damaging the blue Ford Expedition while**
**Defendant blocks the vehicle on July 10, 2025.  <u>Id.</u> at 34.**

15       Further, on July 16, 2025, Defendant posted a video to her
16  TikTok social media account that was an edited collage of videos that
17  related to the July 10, 2025 incident at the Glass House Farms.  The
18  video includes Defendant talking a selfie-photograph, Defendant's
19  vehicle, and a clip of the social media video that Carrillo sent
20  Defendant that depicts them assaulting the Government vehicles and
21  agents.  <u>Id.</u> at 31-32.
22       Another image on one of Defendant's phones shows her vehicle
23  with the captions "Just some minor scratches but Babygirl is a [sic]
24  clean now" and "The battle aftermath".  In another image on
25  Defendant's phone is Defendant's vehicle with the caption "La bichota
26  is back in action!!" and "@bennysautoglass @vcdefensa Thank you for
27  all the support!!"  As the affiant explained, "bichota" is a slang
28  term that roughly translates to "big shot," and is often used in the

16

1  context of referring to a top-ranking member of a gang or a mobster.

2  Id. at 33.

  

**Images of Defendant's vehicle, used in the July 10, 2025 assault, on Defendant's phone.**

Thus, the weight of the evidence demonstrates that Defendant should be detained.

### E.    Danger to the Community

Defendant presents a significant danger to law enforcement and the community.  Defendant is part of a concerted effort to impede and injure law enforcement.  As detailed in the Complaint, this includes coordination and communication to disrupt law enforcement operations, tailgating law enforcement officers ("I be driving like a savage to keep up with them"), and participating in a full-on ambush and assault of law enforcement vehicles on July 10, 2025.  As a result of that assault, at least four vehicles were damaged and at least one federal contract employee was injured.  In the days after that assault, Defendant make clear that she had no intention of stopping ("I know it's just a matter of time before the feds comes knocking on my door . . . In the meantime imma keep doing what I do".)  And when

1    the "feds" did come to her door, she reached out to her network to

2    escape, or, in her words, "outsmart federal agents."  Defendant has

3    demonstrated that she presents a clear and ongoing danger to law

4    enforcement.

5        The fact that Defendant is targeting law enforcement should in

6    no way diminish the danger she represents.  Imagine if Defendant was

7    targeting a particular racial, religious, or political group because

8    she disagreed with them.  And imagine as part of that conduct,

9    Defendant actively conspired and communicated with others on how to

10   harass members of that group, and then actively assaulted members of

11   that group.  That type of conduct would present a clear and ongoing

12   danger.  That is exactly the situation here.

13       Moreover, the danger posed by Defendant extends not just to law

14   enforcement.  As described above, Carrillo suggested to Defendant to

15   have someone with a bicycle participate in tailgating law enforcement

16   vehicles to make it harder for law enforcement to conduct their

17   operations.  Defendant spelled out the implication: the bicyclist

18   could "get hit and go flying."  Carrillo called this risk, "a

19   strategic counter defense."  Complaint at 29-30.  Thus, Defendant and

20   Carrillo were explicitly discussing putting law enforcement in a

21   position that might cause an accident that could kill or seriously

22   injure a bicyclist.  Given the significant danger posed by Defendant,

23   she should be detained.

24       **F.   Risk of Flight**

25       In addition to presenting a significant danger, Defendant also

26   presents a serious risk of flight.  As described above and in the

27   Complaint, the very purpose of Defendant's conspiracy and conduct was

28   to interfere with the orderly operation of federal law and impede

18

1  federal arrests.  Given Defendant's willingness to violate federal
2  law for this purpose, Defendant's conditions of release would not be
3  sufficient to reasonably assure her appearance in this case.

4       Moreover, while Defendant has demonstrated community ties, it is
5  those very same community ties that could help effectuate her flight.
6  As described above and proffered at the initial detention hearing,
7  when law enforcement were outside of Defendant's residence preparing
8  to execute the arrest and search warrants in this case, Defendant
9  posted on social media that the "Feds" had their house surrounded and
10 to come support.  Defendant then made good on her escape by fleeing
11 to a car that pulled up and drove away.  While Defendant self-
12 surrendered approximately 12 hours later, she laughed about her
13 flight the next day, explaining that the purpose of her actions was
14 to "outsmart federal agents."  Defendant has demonstrated a lack of
15 respect for the law and that she cannot be trusted not to attempt to
16 "outsmart" federal agents and this Court's pretrial supervision while
17 on pretrial release.  Therefore, Defendant should also be detained
18 based on her serious risk of flight and nonappearance.

19 **IV.   CONCLUSION**

20      For the foregoing reasons, the government respectfully requests
21 that this Court grant the government's Application for Review of
22 Order Setting Conditions of Release and order that defendant be
23 detained pending trial.